We'll hear from Mr. Alanoff. Yes, good morning, Your Honor. Good morning. Dan Alanoff, on behalf of the appellant, and with the court permission, I'd like to observe three minutes for rebuttal. Three, we're going from five to four to three. That's fine. Thank you. Sounds like a baseball play. Yeah, well, the Phillies had a triple play this weekend. Thank you, Your Honor. An issue in this appeal, as the court knows, is whether there's an applied private remedy under 3009. Right of action, as we all know. Right. And as I'll get into later, I think that term may be somewhat synonymous with Congress's intent to create a private remedy and its intent to create a private right of action. Speak clearly so people can hear you. Okay. Thank you, Your Honor. I apologize. I think there are two fundamental issues upon which this appeal will turn, and I'd like to just briefly take the opportunity to give you an overview of those two issues. And I'll use my oral argument. Obviously, if there's any questions from the court, but I'd otherwise use the argument, too. Just go ahead and do it. The first point is that the statutory language in 3009B, where Congress created the types of personal rights that this court has recognized as implying a private right of action, by themselves established Congress's intent here to create a private remedy. 3009B? Yes, Your Honor. I thought you were arguing on the basis of 3009A. So go ahead. No, Your Honor, I'm not. It's 3009B. And in 3009B, Congress used the mandatory individually focused... Congress created a private remedy in subsection B, didn't it? You can keep the merchandises again. That's correct, Your Honor. However, the question here is whether or not the language that they used to create that remedy, which looked like if recipients knew about it, could avoid needing a private remedy in court. But what they did in that statute was create those rights to keep the goods without any obligation to the mailer. Let me be clear that I understand your response to my question. You concede that Congress has created some private remedy here in B by permitting the retention of this item that's been sent and the treatment of it as a gift. Is that right? Yes. And so the question is, is that preclusive of a private right of action? And I would answer absolutely not. Doesn't Sandoval say as much? No, and I think that my second point there is going to be... Well, let me just read you this language and then you tell me which thing it means. Because I think in Sandoval it said the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others. Yes, and I don't know exactly where you're quoting from, but I believe this site was page... Page 290 of Volume 532 of the U.S. Reporter. Which page are you doing? U.S. Reporter, page 290. 290, that's funny. Oh, 290, yeah. Go ahead, Mr. I'm trying to find... I think that case cites to the Massachusetts Mutual case. And I think that when that's read in context and understood, the point that the court was making was simply that in cases where... And I believe that case was an ERISA case. In cases where there's one particular remedy, and I believe it was for contractual damages in that case, the question became, could there be implied the additional remedy? And the answer was no. Now, in this case, what we've got here is Congress has created private right to keep the good without obligation to the sender. Now, the second part of that... It's not an adequate remedy. And I think that the next sentence reveals that Congress understands that that remedy could work if people knew about it. And so in the next sentence, what they say is, each person, each recipient, shall be notified of their right to keep it. So the question that we have in the case is, when a company sends unordered merchandise in violation of the statute, when they violate it again by failing to inform the individuals of this right to keep it without obligation, and, in fact, they tell them the opposite when they bill them and when they send donor letters, in that case, implicitly, Congress intended that recipients could come into court to get their money back. The fact that they established the second right, and they did so with the same language that has been held to imply a private right of action, each recipient shall be notified, which compares to the discrimination statutes, no person shall be discriminated against. They didn't say... I think that the dispositive case here, which speaks right to that point, judge Wise, is the Transamerica case. And in that case, both issues really are present. First, what we have here and what there was in Transamerica are essentially two sides of a coin. Congress, on the one hand, is prescribing conduct. In that case, it was the conduct of investment advisors. Here, it's the conduct of mailers of unordered merchandise. But then, separately, they turned their attention away, and they created specific rights for the customers of investment advisors, in that case, and for recipients here. And the Supreme Court looked at that situation, and they spoke to both issues, and they interpreted the same type of structure and text that we have here, and they said, with respect to the part of the statute that prescribes the conduct, there wouldn't be a private right of action. And in Transamerica, that could be enforced by the SEC. But, when Congress turned away and looked at the flip side of the coin, and created those rights for the individuals, that, and in that case, they used the term, contract shall be void. The Supreme Court looked at that and said, that implied, that fairly implied that a private remedy was intended. Now, in this case, what we've got is almost the same thing. We've got a situation, and in both cases, what Congress is saying to investment advisor customers and recipients of unordered merchandise is, you shall have no obligation to the other side. The very slight difference is that, in the first case, they had entered into a contract, and in this case, the senders of unordered merchandise are claiming there's a contract. In each case, what Congress is attempting to do is alter the civil liabilities between the parties and tell the recipients and investment advisor customers, you do not have an obligation to the violators of this statute. The fact that the SEC enforced the Investment Advisors Act did not preclude a private right when Congress was addressing the customers. Same thing here. The FTC can regulate mailers of unordered merchandise, but the fact is that when Congress changed its focus and looked directly at the recipients of unordered merchandise and gave them these rights, which are the same exact types of rights where, in the past, have been held to imply a private remedy, there's no conflict with FTC enforcement. And really, this ties into my second point. I think Transamerica is important for a very important additional reason, and that is that the fundamental premise behind Rodale's argument here and behind the conclusion of the district court is that the language alone cannot be enough. Now, nobody disputes here, and Rodale has conceded specifically, that Congress created private rights and created personal rights. Again, as I said, the same types of rights that have been held to imply a private remedy. What they're disputing is that that language that does that is not enough since the Sandoval case. But since Sandoval, the standard has changed, and now there's something additional that's required, that citing to private rights can imply a private remedy without more. Well, Sandoval emphasizes the text and the structure of the statute. Where do you find this private right in the text and the structure of the statute? Well, I think it's found in both. The fact that as far as the text goes, and the Cannon case, the Supreme Court decided that's where you start, because that's Congress speaking directly about this situation. They have said in 3009B, they've specifically focused, using mandatory language, individually focused, they have created personal rights for recipients of unordered merchandise. That creation of those rights by Congress indicates their intent that right there, they're intending for recipients of unordered merchandise to not suffer financially. And they've set up a scheme. They said, you can keep this, you shall have the right to keep it without any obligation to the sender. And the second requirement was, you must know about the right. So as I had stated earlier, in the case that that implies, we submit, where there's these multiple violations of the statute and multiple frustrations of what Congress is trying to do when recipients are told that they don't have that right, that they owe unbalanced this money. Implicitly, Congress intended that they could go into court. Is Court v. Ashe still the relevant authority to look to in terms of deciding whether there's an implied right of action? I think Court v. Ashe, it's cited in so many cases by the Supreme Court. But the question is, and it may be cited, but is it still the dispositive determinant? No. I would say that Court v. Ashe is a tool from which courts can discern the intent of Congress. In the Tama case, did they cite Court v. Ashe? I can't remember. Did they cite Court v. Ashe? I'm sorry, which case? In the mortgage case. Oh, Chains of America? I believe they did. I believe they did. And, again, it was cited in Sandoval. I'm surprised. I would have thought you would have said in answer, yes, that Court v. Ashe is what we should look to and it helps us. But you didn't say that. It's consistent with everything else out there. I think in the prior jurisprudence before Court v. Ashe. Clearly, plaintiff is one of the class whose special benefit this statute was enacted. That's the first Court v. Ashe case. And is there any indication of legislative intent to create a remedy or deny one? Well, there is an indication of legislative intent to create a remedy because they do create a remedy. Whether it's exclusive is a different question. I mean, I would have thought that you would have come in banging on Court v. Ashe. I think Court v. Ashe is still a relevant and important tool in determining whether Congress intended to create a private remedy. Should we focus more on Sandoval because it's more recent? Well, as I was saying, I think the fundamental mistake that has been made here with Sandoval, Sandoval has some relevance, but there's been a focus on a single sentence of background in Sandoval where the Court said that there must be evidence of Congress's intent to create both a private right and a private remedy. And Rodeo has argued that's new. That now means that unlike in Transamerica, it's not enough to point to that language that created those private rights. But that's not what it's saying because when Justice Scalia wrote that line, he cited to Transamerica, which indicated, and it was stated slightly differently in Transamerica. Transamerica said the ultimate question here is whether or not Congress intended a private remedy. And in both cases, they say the predicate to doing that is to see did Congress create the types of rights, personal rights, that are enforceable in an implied right of action case. What happens in Sandoval is the Court simply says, that is still the predicate, but it's not necessarily a guarantee. For example, in that case, they had a right creating language, but it came from an agency, not from Congress, and it created rights that were beyond the rights that had been created by Congress. And that's all Justice Scalia was saying, is that by citing rights, they're not necessarily guaranteed. It's still the best indicator, and it's still often enough. But there can be situations like in Sandoval where there's some indication that it won't get you into the end game. How do you answer Rodale's argument that they did expressly create a private right of action in another section of the same statute? I think that there's a couple of answers to that, Judge Slaughter. First, that enactment of a statute that expressly created a private right was done 30 years later. In addition, Sandoval itself says, and I believe it's on page 292, what Sandoval says is, if you want to look to a subsequent amendment of the Act as there, where Congress was focusing on a completely different subject, that deserves almost no weight. And the reason is easy to see. To compare what Congress was doing when it was talking about people having a right to exclude themselves from sweepstakes entries as opposed to the language it uses when it's focused on the recipients of unowned goods. Here, clearly the weight to be given is on the language that Congress chose to talk about this situation. Your red light has been on for a while. Judge Wise, do you have any questions to him? No questions. Judge? No. Okay. We'll get you back on rebuttal. Okay. Thank you, Your Honor. Thank you. And we'll hear from Mr. Clarke. Good morning, Your Honor. May it please the Court, I'm Gregory Clarke here on behalf of Rodale, Inc. I'll try to jump right in with some of the issues that the Court has raised. I think that Sandoval and his progeny, including Gonzaga University, and his Court's own decision in Three Rivers, are the controlling decisions that the Court should be focused on in deciding this action. Based on the Transamerica mortgage case, isn't it really the same? I would submit that Transamerica Which was cited in Sandoval. Yeah, I don't think that we certainly don't take the position that TAMA is not authority that continues to be viable. I think TAMA is authority that continues to be viable. It's one of several cases that followed Court v. Ashe, several years after Court v. Ashe, that clarified Court v. Ashe. I think it's there. Tusharovs was the same here, as was Cannon. And I think all three of those cases actually clarify the fact that the inquiry for the Court and determined by private rights of action is to be focused on the intent of Congress with respect to creating a revenue. How are people supposed to know that they can keep the book if companies such as Rodale don't tell them? They just send the book and then they bill them. I think it's happened to all of us. It's very nice for Congress to say you can keep the book, and the FTC is too busy with other important things. If you don't allow a private right of action on behalf of all these people who get all these unwanted books and are being billed for them in rather peremptory language, how are people going to know if you don't allow a class action? I think it's two ways I'd respond to that, Your Honor. First, as a practical matter, people are supposed to know what they agree to and what they haven't agreed to. They're sent the product and they're sent the book and they're sent the bill. They're not supposed to pay the bill if they don't agree to purchasing the product. But how do they know they're not supposed to pay the bill? How do they know they're going to keep the book? Does Rodale say in big letters, we're sending you this, but we can't bill you for it? Well, as a factual matter, Your Honor, of course, as I'm sure you're aware, Rodale does not say that, and Rodale doesn't say that because, in truth, Rodale's not sending unordered merchandise. His appeal is not on those facts, but Rodale, and Mr. Wisniewski in this case, enrolled in an annual Rodale book program. He chose to enroll in it. He was sent products as a result of his affirmative enrolling in the program, and he was sent various notices over time informing him of the terms and conditions of the program. All of that, if it's categorized by factual appeal... Who reads that? I don't read those things. I don't know about anybody else. Consumers are certainly charged with knowingly entering into agreements at the time, at the initiation. But obviously Congress thought there was a problem because if Congress didn't think there was a problem, it never would have enacted the statute. I certainly agree, and it really gets to my second point. And you agree that the statute was that people who received the books and the bills are the special class for whom the statute was enacted. I agree with that, Your Honor. I think that the remedy was carefully crafted. And with respect to people who pay, where payments are made and where injuries are suffered, that's really as a result, assuming that the facts are in line, that's as a result of violations of 2009A and C, which prohibit the mailing of unarmed merchandise, and C, which prohibits the mailing of bills in connection with unarmed merchandise. Those two provisions specifically set forth that that type of conduct amounts to a violation of the FTC Act, for which the FTC has enforcement authority. If Congress intended to give private consumers a right to require damages or restitution amounts paid, they would have said so in C in particular. But we always have that question whenever we reach the issue of implication of a private right of action. You would never have to imply a right of action if Congress had either said you can or you can't. So the fact that Congress didn't say it isn't dispositive. I think what is dispositive, though, is really where Judge Smith started, which is Sandoval's statement, that where Congress provides an express remedy, that strongly suggests that Congress intended to preclude other remedies. In statute, Congress does, in two ways, provide express remedies. It expressly provides the FTC authority to litigate and go after companies that are violating the statute, in particular subsections A and C, though no doubt they would include B as well. And secondly, it gives private consumers the remedy of keeping their books or other products as gifts, if they so choose. But in the Investment Advisors Act, you also have a similar situation. You did have a case in which there was a remedy given, and the Supreme Court said we will still imply a right of action. And he argues in his brief it's exactly the same situation. And I'm not sure why it isn't. Well, the reason that it isn't is if we read TAM up carefully, there really are two things that I believe are driving the outcome of TAM. It's correct that the language that the Court is construing to find a private cause of action is the language in the statute that declared that certain unlawful contracts shall be void. The Court then looked very closely at historically and practically what it means to void a contract. And the Court says that voiding a contract necessarily includes the right to litigate in declaratory judgment the voidness. And the reason that is is because historically, voidness has carried with it the right to rescission, the right to rescind a contract. I think as a practical matter, that made eminent sense for the reason that if you have a void contract, you're not required to perform, but you need the Court to intercede to tell you that you're not required to perform. Additionally, I think it's important in TAM, and I would actually suggest the same thing happened in Canada. The Court particularly noted that the language in the statute in TAM it previously had interpreted in a prior case to include a private right of action. If I remember correctly, it said it had done so before. I'm not sure if I remember this correctly. I'm going to let that go. But I think that the Court relied specifically on that fact. It did that in Canada also when it found a private right of action under Title IX. It said that that decision was compelled by the fact that under Title VI, it was construed in the exact same language. Here, the language that Congress passed in 1970 isn't like any language that the Court previously had used to infer a private right of action. It just simply gives a gift, and the appellant does not point to any other case, I believe, that would show that this type of gift language necessarily implies a private right of action like the voidness language at issue in TAMA. Does that address Your Honor's question? Well, I certainly heard your answer. In addition to that, I think that what's really going on here, and you see in the reply brief that I heard it again in argument here, is that counsel is looking at the rights that are granted and saying by fiat that the fact that rights were granted really means that an applied cause of action is also granted. And I would argue, and I believe, that Sandoval and Gonzaga stand directly in the way of that argument. In Sandoval, the Court said that it's not enough alone to grant private rights. There also must be a private remedy granted. And in Gonzaga, the Supreme Court expounded on that and explicitly said even where we're dealing with a statute that's cast in terms of rights creation, the plaintiff seeking a private right of action still must find a basis in the text or the structure of the act to show that Congress also intended a remedy. And the appellant is not pointing to anything in the text or structure beyond actually the rights-creating language to argue that there's a private remedy. The author of a treatise on the Federal Trade Commission wrote that several statutes that are enforced by the FTC, such as TILA, permit private suits and says that the FTC is increasingly encouraging private parties to supplement its limited resources and assist in policing the marketplace. Now, wouldn't it be helpful? I mean, you say the FTC can enforce this, but we all know how understaffed and busy the FTC is. We've made judicial notice of that. Wouldn't it be helping the FTC to have private actions enforcing this statute? It may well help the FTC to have private actions enforcing the statute. I don't believe that that's the question that's before you today. Obviously, you would argue that should not trump Congress's intent as Sandoval elevates that intent for interpretive purposes. That's certainly correct, Judge Smith. I think that it may good public policy sense to broaden the access to the courts to private litigants under many statutes, and this may well be one of them. That's a question for Congress. That's not, certainly even after Court v. Ash, which abandoned the practice in Jura that was in place before in J.I. Borak, that of finding private rights of action to advance public policy and to advance the purpose of the statutes. In this post-Sandoval world, what kind of a text or structure could Congress include in a statute that would indicate its intent to create, impliably, a private right of action? Well, I think there are... One possible scenario is a statute that clearly provides for private rights. And then you wouldn't have... Oh, go ahead. I'm sorry. And then with respect to remedies, sets forth the remedies that private litigants might have without explicitly stating that there's a private right of action. It sets forth the jurisdiction of the court to hear actions connected to the private right of action that's being founded. I'd suggest that an appellant has not come forward with any analogous post-Sandoval case that shows that this type of statute would fit the bill. Another point, which I don't believe an appellant spoke about, but it is brief, they spoke about the legislative history and the purpose of the statute and the intent to make an argument that the legislative history made clear that a private right of action was intended. I say the very opposite, that either, well, A, the legislative history does not include any statement with respect to creating a private right of action. And I don't think that silence can fairly be inferred to show Congress's intent to create a private right of action. Additionally, the particular language that's cited that's cited in appellant's brief with respect to the creation of a private cause of action in the legislative history, I think, actually shows the opposite. The language that's quoted shows that Congress, and I'm looking for it so that I can quote it accurately, but that Congress intended to control the unconscionable practices of persons who ship merchandise and attempted to trick consumers into paying for it. I think to the extent that the court believes it's proper to look to legislative history, that statement actually shows that Congress's purpose in enacting the statute was really to regulate the conduct of the senders of mail, not to provide private rights. And in fact, the two things in that comment, the desire to control unconscionable practices and to stop these persons who do this, into tricking consumers into paying for it, those purposes are specifically reflected in sections 3009A and C, not in B. There's no mention of a gift or a private right with respect to a gift. What there is, is a purpose to stop the sending of unordered merchandise reflected in A, and to stop the sending of bills in connection with that unordered merchandise which is reflected in C. And those two provisions are the provisions that explicitly make that type of conduct a violation of the FTC Act and therefore explicitly provide for enforcement by the FTC. If the court has no questions, I'll conclude. Joe? Joe? No, we're good. Okay, thank you. Thank you. Before I rebuttal, I just would like to make a few points. I think one point of confusion here is whether or not Sandoval changed anything with respect to the fact that the right creating language could also establish the intent to create a private remedy. And I believe that Sandoval changed nothing in that regard. We go right to the statement that is sort of the center of this differing view because Rodel's counsel had said that we're trying to say that the language establishes this, and we are, but I think you can still do that after Sandoval. We go right to the statement by Justice Scalia. He says, The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. That's the key statement, and that's what And then he says, Statutory intent on this latter point is determinative. Absolutely. It is determinative. So the task is to determine what is intended by Congress explicitly and implicitly. But the first statement is citing Transamerica, where the language alone was the indicator of Congress's intent to create the private remedy. And this is a statement that comes in the background. It's not the holding of Sandoval. I don't think it changed anything. By citing to Transamerica, it necessarily says that there's still a possibility, and certainly it is the case in most cases, that the language will establish that intent. In fact, when Justice Scalia starts the opinion, the first thing he says is, It's very important to note we're not talking about the situation that we had in Chicago, University of Chicago versus Cannon, where that court, the Supreme Court, said that the right creating language is the most accurate indicator of what Congress was intending. And that would include, obviously, what it implicitly intended. So the fact is that unless Transamerica was somehow overruled to say that, No, you need additional evidence, which it clearly wasn't, the standards still on that point didn't change. And when we look at Transamerica, Now, I have a question to sum up to the side. What are you asking for? What did Mr. Wisniewski say to the court? Now, I'm going to ask, what does he claim as his private right of action? They were sent to him, and he was brought for them. Are you insisting to cancel the contract? Well, we say there is no contract. But what we are saying is that when he was... You've taken three times, starting three sentences, and at no point have you responded to Judge Wise's question. What are you asking for? I was attempting to do that, and I apologize for not doing that clearly. We're asking for recipients of these unordered books to get their money back for what they paid for the books. That's the restitution in this case. They were given the right to... I'm sorry, Judge Wise? So you're asking for $39 in damages or something like that? That's correct. That's correct. Do we know how many people were billed and paid? We know that there was a large number. Then we don't know the exact number because we never got to that point of discovery when this motion was decided. But if I could make one final point, I see my red lights on. It's simply that... Well, actually, it's one and a half points. Well, make it. Okay, I'm sorry. In Tama, one of the reasons that they said that there was a private right was they said, look, if customers of investment advisors were sued on the contract, they certainly could raise the statute defensively. And therefore, they also had the right to offensively seek to have the contracts voided and to get restitution. That's the same thing here. If these recipients were sued, they could certainly raise the statute defensively. And likewise, they should have the right to do so offensively. And my final point is simply that this statute... What I thought I heard my opponent say was that voidness necessarily comes with a certain right to enforce in court. That's exactly what this statute is saying when it talks about you have no obligation to the senator and when it makes that right contingent on the right to know that. So your proposed class is limited to those persons who have already paid for the books after having been billed. Is that correct? That's correct. I see. Which was the half point? Well... It was two points. Thank you. Thank you. Thank you. We'll take this matter under advisement. Thank you all for arguing. Judge Wise, is this a good time to break before the last case? Yes. Okay. We will take a five-minute break before we get to the Williams case. Thank you.